UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC A. CRUZ,<br><br>    Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI,<br><br>    Defendant. | Case No. 22-cv-00555-WHO<br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 16, 24 |

Plaintiff Eric Cruz and the Commissioner of the Social Security Administration (the "Commissioner") have filed cross-motions for summary judgment in this Social Security appeal. Based upon my review of the parties' papers and the administrative record, I GRANT Cruz's motion, DENY the Commissioner's motion, and remand this case for calculation and payment of benefits.

## BACKGROUND

### I. PROCEDURAL BACKGROUND

Cruz applied for Supplemental Security Income ("SSI") disability benefits under Title XVI of the Social Security Act on December 24, 2015. Administrative Record ("AR") [Dkt. No. 13] 152. His application was denied initially on May 9, 2016. *Id.* at 96. The Administrative Law Judge ("ALJ") held a hearing on December 12, 2017. *Id.* at 28-70. At the hearing, Cruz and a vocational expert ("VE") testified. *Id.* at 50-52; 56-66. On June 7, 2018, the ALJ issued a decision finding Cruz not disabled. *Id.* at 96, 12. Cruz unsuccessfully sought review with the Appeals Council, and on May 29, 2019, he filed an action for judicial review in this court. *Id.* at 848-49; *see* Case No. 19-cv-02938-WHO. The parties submitted a Stipulation for Voluntary Remand which I granted, and remanded the case requiring the ALJ to:

    (1) reevaluate the medical evidence, including the medical-source

> opinion evidence relating to Plaintiff's functional capabilities and re-evaluate his maximum residual functional capacity; (2) re-evaluate his symptoms testimony as necessary; and (3) if it is determined Plaintiff cannot return to his former work, determine what occupations Plaintiff might be able to perform, pursuant to the relevant regulations with the help of a vocational expert if necessary, and take further action as appropriate to issue a new decision. *Id.* at 854-64.

The ALJ held a second hearing on August 24, 2021. *Id.* at 796-824. At the hearing, Cruz and VE Lorian Hyatt testified. *Id.* at 796-824. On November 2, 2021, the ALJ issued his second decision again finding Cruz not disabled, and this decision became the Commissioner's final decision after Appeals Council declined review. *Id.* at 771-95. On January 27, 2022, Cruz filed this action for judicial review pursuant to 42 U.S.C. § 405(g). ("Comp.") [Dkt. No. 1].

The parties then attempted reach an agreement as to the scope of a voluntary remand for this case, but were unable to reach an agreement. Opposition and Cross-Mot. for Summary Judgment ("Oppo.") [Dkt. No. 24] at 2:15-19. The Commissioner agrees that the ALJ should have found Cruz disabled after he turned 50 and that I should award benefits for that period. Oppo. 1:4-13. The Commissioner also concedes that the ALJ's determination that Cruz could perform work and was therefore not disabled for the period before he turned 50 was erroneous. *Id.* However, the Commissioner argues that I should remand for further proceedings to assess Cruz's disability for the period before he turned 50, *id.* at 14-15, whereas Cruz argues that I should apply the credit-as-true rule and remand for calculation and award of benefits. Pl. MSJ ("Mot.") [Dkt. No. 16] at 20:9-21:19; Pl. Repl. ("Repl.") [Dkt. No. 27] at 2:14-20.

## II. MEDICAL HISTORY AND FURTHER ALJ PROCEEDINGS

Cruz claims that he is disabled due to a "combination of impairments including degenerative disc disease of the cervical and lumbar spine with radiculopathy." Mot. 5:7-9. Cruz was born in January 1971. *Id.* 5:3. Cruz was 44 years old when he applied for SSI in 2015, and indicated that his disability began on December 19, 2014. *Id.* 5:7; AR 152.

### A. Medical Records

#### 1. Dr. Shian-Yeng Lai

Shian-Yeng Lai, M.D., was Cruz's treating physician. Cruz first visited Dr. Lai on January 5, 2015. AR 307. Cruz saw Dr. Lai "every few months." *Id.*

2

Dr. Lai submitted a Physician's Medical Source Statement dated June 27, 2016 ("Physician Statement"). *Id.* at 307-10. In the Physician Statement, Dr. Lai diagnosed Cruz with "cervical stenosis of [the] spine." *Id.* at 307. To describe Cruz's symptoms, Dr. Lai wrote, "[p]ain, weakness, loss of balance, [and] tingling." *Id.* Dr. Lai identified "objective signs and findings" to include "muscle spasm," "muscle weakness," "tenderness," "sensory changes," "reflex changes," and "abnormal gait." *Id.* Dr. Lai opined that, during a typical workday, Cruz's symptoms would "frequently" (34% to 66% of a workday) be severe enough to interfere with "attention and concentration needed to perform even simple work tasks[.]" *Id.* at 308. Dr. Lai wrote that Cruz could sit for up to 60 minutes at a time before needing to get up, *id.*, and stand for 45 minutes before needing to sit down or walk around, *id.* Dr. Lai estimated that Cruz could sit for four hours, stand for two hours, and walk for two hours total over the course of an eight-hour day and that he would have to take 10 to 15-minute walking breaks every hour throughout the day. *Id.* Dr. Lai also noted that Cruz would need to shift positions at will and take additional unscheduled breaks of 15 to 30 minutes every hour. *Id.* at 309. Dr. Lai wrote that Cruz could occasionally lift less than ten pounds, rarely lift ten pounds, and never lift 20 or 50 pounds. *Id.* Dr. Lai wrote that Cruz could "occasionally" twist, stoop, crouch/squat, climb ladders or stairs and could "occasionally" or "frequently" look down, turn his head, look up, or hold his head in a static position. *Id.* Dr. Lai opined that Cruz would have "good days" and "bad days" and would likely, on average, be absent from work "more than four days per month" due to his impairments. *Id.* at 310. Dr. Lai concluded that the limitations identified in his Physician Statement began on April 21, 2015. *Id.*

### 2. Dr. John Paul Pham

John P. Pham, M.D., was also Cruz's treating physician. Dr. Pham first saw Cruz on January 2, 2015, and saw him "monthly." AR 755.

Dr. Pham submitted a Physician Statement dated November 22, 2017. *Id.* at 755-58. In the Physician Statement, Dr. Pham diagnosed Cruz with cervical myelopathy and spinal stenosis, lumbar myelopathy and spinal stenosis, and irritable bowel syndrome. *Id.* at 755. He noted that Cruz's symptoms included "severe neck and back pain with left leg weakness," "fatigue,"

3

"chronic [abdominal] pain with constipation and bloating," "difficulty walking with [a] cane," and "adjustment disorder with [a] depressed mood." *Id.* Dr. Pham opined that Cruz's physical condition also caused depression, decreased energy, sleep disturbance, and difficulty with concentration. *Id.* at 756. He wrote that Cruz could sit or stand for ten minutes before needed to switch positions and that he could sit, stand, and walk, for one hour per workday. *Id.* He noted that Cruz must shift positions at will and would need to take five-minute walking breaks every 15-30 minutes. *Id.* He said that Cruz would need to take one to two unscheduled breaks per day. *Id.* Dr. Pham opined that occasionally lift less than ten pounds, rarely lift ten pounds, and never lift 20 or 50 pounds. *Id.* at 757. He noted that Cruz could occasionally look down, turn his head, look up, hold his head in a static position, twist, and climb stairs, could rarely stoop, and climb ladders, and could never crouch or squat. *Id.* He estimated that Cruz would, on average, miss approximately three days of work per month as a result of his impairments. *Id.* at 758. Dr. Pham concluded that these impairments first began on December 15, 2014. *Id.*

Dr. Pham also submitted a Mental and Physical Medical Source Statement dated August 13, 2021 ("Source Statement"). *Id.* at 1570-72. In the Source Statement, Dr. Pham opined that Cruz had "mild" limitations in understanding and remembering complex instructions, making judgments on complex work-related decisions, and responding to changes to a routine work setting. *Id.* at 1570-71. He noted that Cruz could frequently lift or carry up to ten pounds, occasionally lift or carry 11 to 20 pounds, and never lift or carry more than 20 pounds. *Id.* at 1578. He wrote that Cruz could sit for 45 minutes and stand and walk for 30 minutes without interruption. *Id.* at 1579. Dr. Pham opined that Cruz could sit for six hours and stand and walk for four hours over the course of a workday. *Id.* When asked the extent to which Cruz could use his hands, he said that Cruz could frequently reach and occasionally handle, finger, feel, and push or pull with his hands. *Id.* at 1580. Dr. Pham further opined that Cruz could occasionally climb stairs, ramps, ladders, and scaffolds, balance, stoop, kneel, crouch, and crawl. *Id.* at 1581.

### 3. Consultative Examinations

In April 2021, L. Salamach , M.D. performed a consultative examination of Cruz. AR at 1035-44. The objective findings of the examination reflected reduced range of motion of the

4

spine, hips, knees, and shoulder and normal range of motion of the elbows, wrists, fingers, and thumbs. *Id.* at 782, 1037. It also revealed "5/5 strength bilaterally in grasp, finger abduction, thumb elevation, wrist flexion and extension, elbow flexion and extension and shoulder abduction," as well as "5/5 strength bilaterally in great toe elevation, ankle dorsiflexion and plantar flexion, knee flexion and extension and hip flexion." *Id.* at 1037. In addition to the objective findings, the examiner's functional assessment concluded that Cruz could "stand and walk for a total of six hours in an eight-hour day in one to two-hour intervals with 10 minutes rest between intervals" and had no sitting restrictions as long as "position changes [were] allowed for 5 to 10 minutes per hour." *Id.* at 1038.[1]

### B. Subjective Testimony

At the first ALJ hearing, Cruz testified that he suffered primarily from bulging discs in his back and that he had already undergone surgery to treat them. *Id.* at 36. He also testified that he had difficulty getting dressed, taking out the garbage, and getting into the shower to bathe. *Id.* at 41. He testified that he could stand for ten to fifteen minutes at a time, *id.* at 49, and could walk to the bus stop, which is an approximately nine-minute walk, but typically had to take at least one break to rest. *Id.* at 46, 48. He said that he had fallen a number of times, including in the shower, and began using a cane as a result. *Id.* at 37, 42. He also explained that he stopped using his cane because it caused him to develop carpal tunnel syndrome. *Id.* at 814. He stated that since he began taking his medication, he is frequently fatigued. *Id.* at 45. Cruz further testified that he lived with his 89-year-old grandmother and would, on occasion, help her cook. *Id.* at 45-46. He testified that his assistance was limited to verbal help and occasionally short periods of physical assistance with tasks such as cutting vegetables. *Id.* at 48-49.

At his second ALJ hearing in 2021, Cruz testified about the limited "non-physical" assistance he provides his grandmother; managing her medications, paying her bills once a month, making sure she has what she needs in the house, and taking her on the bus once a month to doctor's appointment. AR at 803-805, 807. He explained that – for the prior three years – when

---

[1] A previous consultative examination was performed in March 2018. *See* AR 759-70. Because the ALJ did not rely on that prior examination in his decision, I do not need to summarize it here.

he does his own or his grandmother's shopping he himself is taken by his "provider," who also does his laundry, cleans his room, and takes him to his doctor's appointments. *Id*. at 805-806.[2] He explained that when he has to walk, for example to the bus stop, he walks slowly and takes breaks. *Id*. at 810-811. He confirmed that he stopped using a cane as a safety measure because it started giving him carpel tunnel, and now he is extra careful when he walks. *Id*. at 814-815. Finally, he said that he continued to take medications for his pain, id. at 808-809, and that surgery was "his last option" but he was scared to do that. *Id*. at 810.

### C. Vocational Expert Testimony

During the second hearing held on August 24, 2021, the ALJ called Lorian Hyatt to testify as a vocational expert ("VE"). *Id.* at 817. In response to the ALJ's hypothetical question which assumes "a hypothetical individual of the claimant's same age, education and with that same past work experience" but limited in that, among other things, "[the individual] can occasionally handle, finger, feel, push and pull with the right upper extremity," *id.* at 820, the VE testified that the hypothetical individual could work as an assembler, interviewer, or document specialist. *Id.* at 819. The VE testified that restrictions on standing, walking, and sitting, as well as a need to use a cane, would "erode" the number of available jobs by 25 to 50 percent. *Id.* at 821. The VE also testified that if the hypothetical individual needed to "take unscheduled breaks averaging 15 to 30 minutes every hour" or "would miss more than four days of work per month," they would not be able to perform the previously described jobs. *Id.* at 822.

## III. THE ALJ'S SECOND DECISION

On November 2, 2021, the ALJ issued his second opinion finding Cruz not disabled. The ALJ at Step One concluded that Cruz "has not engaged in substantial gainful activity since December 21, 2015, the application date." *Id.* at 777. At Step Two, the ALJ concluded that during the whole period Cruz had the following severe impairments: "cervical degenerative disc disease (DDD) with myelopathy status-post 2015 anterior cervical discectomy and fusion (ACDF) and lumbar degenerative disc disease (DDD) with lumbar radiculopathy." *Id.*

---

[2] He explained that during the prior ALJ hearing when he did not have a provider, it was difficult, but he was able to do his own laundry. AR at 814.

At Step Three, the ALJ determined that Cruz did not have an impairment that met or medically equaled a listed impairment because "the record did not document findings on imaging consistent with compromise of a nerve root(s) in the cervical or lumbosacral spine" or "with compromise of the cauda equina with lumbar spinal stenosis." *Id.* at 779.

As relevant here, the ALJ determined that Cruz had a Residual Functional Capacity ("RFC") to:

> perform sedentary work . . . except lift or carry 20 pounds occasionally, and ten pounds frequently, stand and walk up to four hours of an eight-hour workday, and sit up to six hours. The claimant can only stand or walk up to 30 minutes at one time, and sit up to 45 minutes at one time. The claimant can frequently reach in all directions with the right upper extremity. The claimant can occasionally handle, finger, feel, push and pull with the dominant right upper extremity, but is unlimited with the left upper extremity. The claimant can frequently operate foot controls bilaterally, occasionally climb ramps and stairs, ladders ropes and scaffolds, occasionally balance, stoop, kneel, crouch, and crawl. The claimant cannot work at unprotected heights, and can occasionally work around dangerous, moving mechanical parts, occasionally operate a motor vehicle, occasionally work around concentrated exposures to humidity, cold, heat, and vibrations, dust, odors, fumes, and pulmonary irritants.

*Id.*

Reviewing the opinion evidence in the record, the ALJ gave "little weight" to Dr. Lai's assessment that Cruz required unscheduled breaks, needed to shift positions at will, and would likely need to miss work at least four days a month, and concluded that Lai's opinions were "an overestimation of [Cruz]'s limitations" in light of Cruz's activities and other assessments. *Id.* at 784. Specifically, the ALJ concluded that Cruz's testimony that he attended doctor's appointments by bus, that he experienced neck stiffness only sometimes, and that he was a caretaker for his grandmother and mother was inconsistent with Dr. Lai's assessed limitations. *Id.* The ALJ also pointed to the consultative examination from April 2021, *id.* at 1035-44, that indicated Cruz had normal range of motion of the elbows, wrists, finger and thumb, and full strength in the lower extremities, to support the conclusion that Dr. Lai's assessment was overly restrictive. *Id.* at 784.

The ALJ also assigned "little weight" to portions of Dr. Pham's assessment. Specifically,

the ALJ rejected Dr. Pham's statements that Cruz could walk less than one block without severe pain, could only sit or stand for limited periods of time, required walking breaks, and needed to shift positions at will. *Id.* at 784-85. The ALJ determined that these portions of Dr. Pham's statement were inconsistent with the 2021 consultative examination and Cruz's ability to serve as a caretaker for his mother and grandmother. *Id.* at 785. The ALJ also gave little weight to Dr. Pham's assessment that Cruz needed to use a cane because Cruz later testified at the second hearing that he no longer used the cane. *Id.*

After the RFC analysis, the ALJ concluded that Cruz was unable to perform any of his past relevant work. *Id.* at 787. Considering the VE's testimony as well as Cruz's age, education, work experience, and RFC, the ALJ determined that a significant number of jobs existed in the national economy that Cruz can perform, including Assembler, Interviewer, and Document Specialist. *Id.* at 788. Accordingly, the ALJ found that Cruz was not disabled. *Id.* at 789.

## LEGAL STANDARD

### I.  DISABILITY DETERMINATION

A claimant is "disabled" as defined by the Social Security Act if he is (1) "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (2) the impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 1382c(a)(3)(A)-(B); *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012). To determine whether a claimant is disabled, an ALJ engages in a five-step sequential analysis as required under 20 C.F.R. § 404.1520(a)(4)(i)-(v).

In the first two steps of the evaluation, the claimant must establish that he (1) is not performing substantial gainful activity, and (2) is under a "severe" impairment. *Id.* § 416.920(a)(4)(i)-(ii). An impairment must have lasted or be expected to last 12 months in order to be considered severe. *Id.* § 416.909. In the third step, the claimant must establish that her impairment meets or medically equals a listed impairment described in the administrative

8

regulations. *Id.* § 416.920(a)(4)(iii). If the claimant's impairment does not meet or equal one of the listed impairments, before proceeding to the fourth step, the ALJ is to make a residual functional capacity determination based on all the evidence in the record; this determination is used to evaluate the claimant's work capacity for steps four and five. *Id.* § 416.920(e). In step four, the claimant must establish that her impairment prevents the claimant from performing relevant work he did in the past. *Id.* § 416.920(a)(4)(iv). The claimant bears the burden to prove steps one through four, as "at all times, the burden is on the claimant to establish [his] entitlement to disability insurance benefits." *Id.* (alterations in original). Once the claimant has established this prima facie case, the burden shifts to the Commissioner to show at the fifth step that the claimant is able to do other work, and that there are a significant number of jobs in the national economy that the claimant can do. *Id.* §§ 416.920(a)(4)(v), (g); 416.960(c).

## II.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error. *See Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *see also DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards). Substantial evidence means "'more than a mere scintilla,' but less than a preponderance." *See Saelee v. Chater*, 94 F.3d 520, 521–22 (9th Cir. 1996) quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Richardson*, 402 U.S. at 401 (internal quotation marks and citation omitted).

This Court must review the record as a whole and consider adverse as well as supporting evidence. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. *See Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *See Robbins*, 466 F.3d at 882 (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)); *see also Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir.

2007).

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). There are three parts to the credit-as-true rule. First, courts ask whether "the record has been fully developed and further administrative proceedings would serve no useful purpose[.]" *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014). Next, the court determines whether "the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion." *Garrison*, 759 F.3d at 1020. Finally, the court considers whether, "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."

## DISCUSSION

The Commissioner concedes that the ALJ should have found that Cruz was disabled after he turned 50 years old on January 10, 2021. Oppo. at 3:5-22. On this date, Cruz became an "individual approaching advanced age" and should have been classified as disabled under the Medical-Vocational Guidelines ("the Grids"). *Id.* at 3:14-22. Both Cruz and the Commissioner agree that I should remand for payment of benefits as of January 10, 2021, when Cruz turned 50 years old. *Id.* at 1:13. The only dispute is regarding the appropriate remedy for the period between December 21, 2015, when Cruz applied for benefits and when he turned 50 on January 10, 2021. The parties disagree on whether I should remand the case for additional proceedings or apply the credit-as-true rule and remand solely for calculation and award of benefits.

Cruz argues that: (i) the ALJ improperly rejected the medical opinions of Cruz's treating physicians, Lai and Pham; (ii) the ALJ improperly discredited Cruz's subjective testimony; and (iii) the ALJ improperly assessed his ability to perform other jobs based on his RFC. Mot. at 2:5-8. As a result of these errors, Cruz contends that the credit-as-true rule should be applied and once applied given the limitations imposed by Lai and Pham, his case should be remanded for payment of benefits. *Id.* at 21-24. As explained below, I agree. The ALJ did not simply err in failing to apply the Grids, as the Commissioner concedes, he also improperly discounted Cruz's treating

10

1  physicians' limitations, in part by mischaracterizing Cruz's testimony regarding his daily life

2  activities. Applying the credit-as-true standard, and looking to the record as a whole, I have no

3  doubts that Cruz was disabled in the 2015 to 2021 period, and I remand for payment of benefits.

## I. TREATING PHYSICIANS

Cruz argues that the ALJ impermissibly rejected the opinions and limitations imposed by his treating physicians. To properly reject the opinion of a treating or examining doctor when it is uncontradicted by another doctor, the ALJ must state "clear and convincing reasons" for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). However, if the treating or examining physician's opinion is contradicted by another physician, an ALJ may reject the treating or examining physician's opinion if she states "specific and legitimate reasons" that are supported by substantial evidence. *Id.* at 830-31.

The ALJ gave "little weight" to Dr. Lai's assessment—that Cruz would need to "take unscheduled breaks every hour for 15-30 minutes" and would "be absent from work more than four days per month"—and concluded that this was an overstatement of Cruz's limitations. AR 784. In support, the ALJ cited Cruz's testimony regarding his daily activities and noted that the assessment was "not consistent with the record" and "also not consistent with the updated consultative examination." *Id.* at 784. The Commissioner argues that the ALJ properly discounted Dr. Lai's opinions because the medical evidence showed that Cruz had a "normal gait, full 5/5 strength, normal coordination, and intact range of motion." Oppo. at 6:4-6. The Commissioner also points out that the ALJ considered Cruz's "conservative" treatment history and that aggressive treatment had improved Cruz's symptoms. *Id.* at 6:27-7:8.

To the extent that the ALJ relied generally on the medical record, he failed to provide "specific and legitimate" reasons for discounting Dr. Lai's assessment of Cruz's limitations. *Chater*, 81 F.3d at 830. The ALJ noted that the objective findings from the 2021 consultative examination, AR 1037-38, were not consistent with Dr. Lai's assessment of Cruz's limitation. *Id.* at 784. Certainly, an examination performed five years later could be relevant in evaluating the credibility to Dr. Lai's assessment. But the ALJ failed to explain how the examiner's objective findings conflicted with those of Dr. Lai and simply concluded that they were "not consistent." *Id.*

at 1037-38. The ALJ only discussed the objective findings and ignored the limitations that were found by the examiner, which were largely the same as those noted by Dr. Lai—that Cruz would need unscheduled breaks and walking periods every hour, shift positions at will, and would be absent from work more than four days per month—and instead relied only on the objective observations (range of motion, gait, and strength) made during the examination. *Id.* The ALJ's reliance on the consultative examination is therefore misplaced because he ignored the noted limitations that did not conflict with Dr. Lai's findings and, most significantly, failed to explain how the objective findings of the consultative examiner were inconsistent with the critical limitations imposed by Dr. Lai.

The ALJ also improperly discounted Dr. Pham's assessment that Cruz would need to take unscheduled breaks and be absent from work. *Id.* at 784, 787. The ALJ provided nearly identical reasons for discounting Dr. Pham's assessment as he did for Dr. Lai's. *Id.* For the same reasons discussed above, the ALJ's reliance on other medical evidence did not provide "specific and legitimate" reasons for discounting Dr. Pham's testimony because he never explained how the objective findings from the consultative examiner that the ALJ identified conflicted with Pham's limitations regarding unscheduled breaks and missed days.

In discounting both Dr. Lai and Dr. Pham's assessments, the ALJ also relied on Cruz's testimony regarding his daily activities. That was error because the ALJ overstated the extent of Cruz's activities. For example, the ALJ identified Cruz's ability to walk and take the bus to doctor's appointments as showing he had a greater capacity for activity than needing to "rest 30 minutes every hour." *Id.* at 784. But Cruz testified that although he could walk the nine to ten minutes to the bus stop, for example once a month to accompany his grandmother to the doctor, it was very difficult for him, he went slowly, and he had to stop to rest along the way because of the pain it caused him. *Id.* at 48, 807, 811.

The ALJ further relied on Cruz's testimony that he took care of his grandmother and mother on a daily basis and characterized him as a "caregiver." *Id.* at 784. But Cruz's testimony was that he occasionally helped his grandmother with small tasks, such as helping chopping vegetables (for 10 minutes and using a stool), helping her to remember to take medications,

12

helping her pay her bills once a month, and occasionally helping her shopping. *Id.* at 47, 803. He frequently gave her verbal assistance, but only provided actual physical help "once or twice a week," and only for "short periods." *Id.* at 48-49. Most significantly, the ALJ ignored that Cruz had his own assistant to help him perform daily activities, including going shopping for him *and his grandmother*, doing his laundry, and taking him to appointments. *Id.* at 805.[3] The ALJ's characterization of Cruz as a "caregiver" for two adults is not supported by substantial evidence.

In sum, although the ALJ considered Cruz's daily activities, he failed to consider the extent to which Cruz engaged in any of the activities. *See, e.g.*, *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) (concluding that an ALJ did not provide "specific and legitimate" reason where "[t]he ALJ did not develop a record regarding the extent to which and the frequency with which" the claimant engaged in daily activities). Cruz's testimony cannot be used to discount his treating physicians' limitations.

## II.  CRUZ'S SUBJECTIVE TESTIMONY

The ALJ also improperly discounted Cruz's subjective testimony regarding the intensity, persistence, and limiting effects of his symptoms. An ALJ must conduct a two-step analysis to determine whether a claimant's subjective testimony is credible. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)) (quotation marks omitted). "The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Lingenfelter*, 504 F.3d at 1035-36 (citation and quotation marks omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear, and convincing

---

[3] It is true that there were time periods where Cruz did not have a helper and had to clean his own room, do his own laundry, and ride the bus to appointments. *See* AR 813-14. But during those times he testified that doing those chores very occasionally was extremely difficult. *Id.* at 814.

reasons for doing so. *Id.* (citation and quotation marks omitted).

The ALJ concluded that Cruz's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 780. The ALJ therefore needed to provide "specific, clear, and convincing reasons" for rejecting Cruz's testimony. *Garrison*, 759 F.3d at 1015; Mot. 18:19-20. This is a high bar to meet: "The clear and convincing standard is the most demanding required in Social Security cases." *Id.* (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir.2002)).

The ALJ discounted Cruz's testimony because he determined that (1) Cruz maintained a level of functioning inconsistent with his testimony, (2) Cruz's testimony was inconsistent with the overall record, and (3) Cruz underwent only "conservative" treatment. AR 780-83. In addition to the portions of Cruz's testimony discussed above, the ALJ noted that Cruz's decision to not use a cane was inconsistent with Dr. Pham's assessment that he required one. *Id.* at 757, 782. But, as Cruz explained at the hearing, he stopped using the cane only because using it caused him to develop carpal tunnel syndrome, and instead when walking he tried to be extra careful. *Id.* at 814, 816. As discussed above, Cruz's testimony regarding his daily activities is not contradictory to the medical record. Cruz's testimony regarding his level of activity supports Cruz's limitations and does not provide clear reasons for discounting it.

The ALJ's reliance on the "overall record" is also not specific and convincing. Although the ALJ recounted multiple medical examinations that showed some improvement, he did not discuss how the findings were inconsistent with Cruz's testimony about his continued pain, difficultly walking, and inability to sit for extended periods of time. Similarly, the ALJ did not explain how Cruz's "conservative" treatment history gives reason to discount his subjective testimony. The record shows that Cruz had spinal surgery in 2015, that he received epidurals that helped but did not resolve his severe pain, and that he consistently took pain medications that likewise helped but did not resolve his symptoms. AR 781, 808, 811-12. The ALJ therefore failed to provide "specific, clear, and convincing" reasons for discounting Cruz's testimony. *Garrison*, 759 F.3d at 1015; *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) ("[T]he ALJ must identify what testimony is not credible and what evidence undermines the

14

claimant's complaints.") (citation and quotation marks omitted).[4]

## III.     REMEDY

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague*, 812 F.2d at 1232. Cruz asks that I apply the credit-as-true rule and remand for an award of benefits. Mot. at 21:21-24. Under the credit-as-true rule, remand for calculation and payment of benefits is appropriate where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. Even where the credit-as-true factors are met, the district court retains "flexibility" and may remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Garrison*, 759 F.3d at 1020; *see also Carney v. Saul*, No. 19-cv-04265-WHO, 2021 WL 965324 (N.D. Cal. Mar. 15, 2021).

Cruz satisfies all three conditions of the credit-as-true rule. First, there is no need to further develop the record or to hold future administrative proceedings. The record before the ALJ was extensive, totaling over one thousand pages and including dozens of Cruz's medical appointments within the relevant time period. The record also reflects Cruz's testimony at two hearings and statements from two, long-term, treating physicians. Furthermore, the VE specifically testified that an individual with Cruz's limitations, as described by Dr. Lai and Dr. Pham, could not attain work. *See, e.g.*, *Trevizo v. Berryhill*, 871 F.3d 664, 683 (9th Cir. 2017) (finding that a similarly developed record met the first credit-as-true factor).

The Commissioner argues that further proceedings would serve the "useful purpose" of

---

[4] Cruz argues—and the Commissioner concedes—that the ALJ committed reversible errors in finding Cruz not disabled for the period before he aged 50, "because [the ALJ] did not obtain a reasonable explanation for the conflict between the VE's testimony that Plaintiff could work . . . and the physical requirements for these occupations[.]" Oppo. at 4:11-14. Because both parties agree that the ALJ failed to explain these inconsistencies, I need not address them here.

allowing the ALJ to "reevaluate the medical and non-medical evidence, reassess [Cruz]'s RFC, and redetermine whether [Cruz] was disabled" before he turned 50.  Oppo. 4:15-17.  But "allowing the ALJ to revisit the medical opinions and testimony that she rejected for legally insufficient reasons" does not qualify as a "useful purpose" justifying remand under the credit-as-true rule.  *Garrison*, 759 F.3d at 1021; *see also Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication." (citation omitted)).

Second, as I have explained, the ALJ failed to provide legally sufficient reasons to reject Cruz's testimony and the opinions of his treating physicians.  *See supra*, Sections I, II.

Third, if the improperly discredited evidence were credited as true, it is clear that the ALJ would be required to find Cruz disabled for the period before he turned 50 on remand.  Dr. Lai and Dr. Pham's opinions establish that Cruz was disabled because the VE testified that a person with the impairments described by Cruz and his treating physicians could not work.  Specifically, his treating physicians stated that Cruz would need to take walking breaks every hour and would likely miss up to four workdays per month.  Both treating physicians stated that these limitations began before December 2015.  AR 310, 758.  The VE testified that a person with such limitations could not perform any of the occupations that he had previously identified.  *Id.* at 822; *see also Garrison*, 759 F.3d at 1022 (finding that the third credit-as-true factor was met where "a VE explicitly testified that a person with the impairments described . . . could not work").

Furthermore, "exceptional facts"—age of claimant, time since application for benefits, burden of delay—may inform my decision to exercise my discretion to remand for immediate payment of benefits.  *Terry v. Sullivan*, 903 F.2d 1273 (9th Cir. 1990); *see also Trevizo*, 871 F.3d at 683 (citation omitted); *Howard v. Saul*, No. 3:18-cv-02570-JD, 2019 WL 6311411 (N.D. Cal. Nov. 25, 2019).  Cruz first applied for benefits more than seven years ago and additional delays would be "unduly burdensome."  *Terry*, 903 F.2d at 1280 (remanding for payment of benefits where seven years had passed since claimant filed for benefits); *see also Trevizo*, 871 F.3d at 683 (same).

Because all three credit-as-true factors are met, and reviewing the record as a whole, there

are no serious doubts that Cruz is in fact disabled, I conclude that this case should be remanded for calculation and payment of benefits.

## CONCLUSION

Cruz's motion is GRANTED, the Commissioner's motion is DENIED. Cruz is entitled to SSI benefits from December 21, 2015, to the present. *See Wellington v. Berryhill*, 878 F.3d 867, 872 (9th Cir. 2017) (Claimant "cannot receive [SSI] benefits for any period before her application date." (citations omitted)).

The case is REMANDED for calculation and award of benefits.

**IT IS SO ORDERED.**

Dated: March 15, 2023



William H. Orrick
United States District Judge

17